**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

*FILED*

*2018 APR 12 PM 3: 47*

*CLERK US DISTRICT COURT*
*MIDDLE DISTRICT OF FLORIDA*
*JACKSONVILLE DISTRICT*

HARTFORD FIRE INSURANCE
COMPANY,

Case No. 3:18-cv-485-J-39PDB

        Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

        Defendant.

_____ /

**PLAINTIFF HARTFORD FIRE INSURANCE COMPANY'S**
**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

Plaintiff Hartford Fire Insurance Company ("Hartford") hereby files this Complaint against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and states as follows:

**INTRODUCTION**

1.     This is an insurance coverage dispute involving a class action lawsuit against Wells Fargo entitled *Rhodes v. Wells Fargo Bank, N.A.,* Case No. 2:17-cv-00093 (E.D. Wash.) (the "*Rhodes* Lawsuit"). The *Rhodes* Lawsuit alleges, in part, that Wells Fargo and/or its agents wrongfully and forcibly entered borrowers' properties prior to completion of foreclosures, destroyed and removed existing locks, removed personal property, and damaged property inside the homes, resulting in damage to real and personal property, conversion of personal property, and interference with the borrowers' full use and enjoyment of their real and personal property. The *Rhodes* Lawsuit alleges violation of the Washington Consumer Protection Act under RCW chapter 19.86 ("CPA"); conversion; and injunctive relief to prevent further entry.

2.      Hartford issued certain liability insurance policies to Fidelity National Financial, Inc. ("Fidelity National") that, on information and belief, Wells Fargo contends provide coverage for the *Rhodes* Lawsuit.  ServiceLink Field Services, LLC ("ServiceLink"), a subsidiary of Fidelity National, performed field services for Wells Fargo pursuant to a series of written agreements.  On or around September 26, 2017, Wells Fargo demanded defense and indemnification from Fidelity National pursuant to those agreements for the claims asserted against Wells Fargo in the *Rhodes* Lawsuit.

3.      Hartford contends that it owes no obligation to pay for defense or indemnity costs incurred by Wells Fargo for the *Rhodes* Lawsuit.

4.      Hartford now seeks a declaration regarding the parties' respective rights and obligations with respect to Wells Fargo's defense and indemnity costs incurred in connection with the *Rhodes* Lawsuit.

5.      Actual controversies exist between the parties necessitating declarations regarding the parties' respective rights and obligations for the *Rhodes* Lawsuit.

## THE PARTIES

6.      Plaintiff Hartford Fire Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

7.      Defendant Wells Fargo Bank, N.A. is a National Banking Association with its main office in South Dakota and its principal place of business in San Francisco, California.  Wells Fargo is authorized to transact and does transact business in the state of Florida.

2

## JURISDICTION AND VENUE

8.     Jurisdiction in this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

9.     The costs of defending and indemnifying Wells Fargo in connection with the *Rhodes* Lawsuit exceed $75,000.

10.     Diversity jurisdiction exists because (a) there is complete diversity of citizenship between Hartford and defendant; and (b) the amount in controversy, exclusive of interest and costs, exceeds $75,000.

11.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## FACTUAL ALLEGATIONS

### The *Rhodes* Lawsuit

12.     Wells Fargo owns or services mortgage obligations subject to deeds of trust that contain "entry provisions" permitting Wells Fargo to enter, maintain, and secure the property after the borrower's default or abandonment.  Wells Fargo allegedly relied on these provisions to authorize entry onto properties it ordered to be inspected and/or secured.

13.     On or around December 8, 2016, Valerie Rhodes filed the *Rhodes* Lawsuit against Wells Fargo in Stevens County Superior Court, Washington.  Wells Fargo removed the case to the U.S. District Court for the Eastern District of Washington, where it is currently pending.

14.     The *Rhodes* Lawsuit alleges that, upon a borrower's default, but prior to the conclusion of any foreclosure proceedings, Wells Fargo or its agents forcibly entered

3

properties deemed vacant or abandoned, changed locks, and damaged, removed, or destroyed borrowers' personal property.  The complaint in the *Rhodes* Lawsuit references, and includes as an exhibit, the Washington Supreme Court's decision in *Jordan v. Nationstar Mortgage., LLC*, 185 Wash. 2d 876 (2016).  The *Rhodes* Lawsuit alleges that, in *Jordan*, the Washington Supreme Court held that the Entry Provisions contained in Deeds of Trust conflict with Washington law that prohibits a lender from taking possession of property prior to foreclosure.

15.    The plaintiff in the *Rhodes* Lawsuit alleges that she owned property securing a loan that was in default but for which foreclosure had not been initiated.  The complaint alleges that Wells Fargo or its agents entered her property at a time when it was neither vacant nor abandoned by damaging locks and doors and, while there, changed the locks, removed and damaged her personal property, and refused to return her lost property or reimburse her for the damage or loss of use of the property.

16.    The *Rhodes* Lawsuit alleges that Wells Fargo has a common policy of training and instructing its agents to enter properties, prior to the completion of any foreclosure.  The Lawsuit further alleges that Wells Fargo instructs its agents to use whatever means necessary to enter properties, including drilling out the owner's locks and, once inside, agents are instructed to take and carry away personal property found therein.

17.    Based on the foregoing allegations and the *Jordan* holding that the entry provisions in the deeds of trust are unenforceable and any entry pursuant thereto unlawful, the *Rhodes* lawsuit asserts that Wells Fargo is liable to Washington borrowers for (1) the cost of restoring each borrower's home to its original state prior to the wrongful entry and re-keying of their properties; and (2) the fair market rental value of each borrower's home.

4

18.     The *Rhodes* Lawsuit asserts claims on behalf the plaintiff and a proposed

class for common law trespass, intentional trespass under RCW 4.24.630, violation of the

Washington Consumer Protection Act under RCW chapter 19.86, conversion, and

injunctive relief to prevent entry under the Entry Provision.  The proposed class of

plaintiffs in the *Rhodes* Lawsuit consists of citizens of Washington State:  (a) who owned

real property in Washington State, subject to a loan default; (b) which property, within the

applicable statute of limitations, was entered upon by Wells Fargo and/or its agents prior to

the completion of any judicial or non-judicial foreclosure; and (c) which entry upon the

property was the proximate cause of damage to the homeowner by: (i) damaging the

homeowners' real or personal property; and/or (ii) converting the homeowner's personal

property or belongings; and /or (iii) interfering with the homeowner's full use and

enjoyment of the home.

19.     On or about December 20, 2017, the plaintiff in the *Rhodes* Lawsuit filed a

notice stating that the parties had reached a settlement and were in the process of

documenting the settlement.

**The Hartford Policies**

20.     Hartford Fire Insurance Company issued the following series of policies to

Fidelity National and its predecessor, Lender Processing Services, Inc.: (a) Policy No. 20

CSE R20202 to Lender Processing Services, Inc. for policy periods July 1, 2012 to July 1,

2013 and July 1, 2013 to January 3, 2014; (b) Policy No. 20 CSE C90920 to Fidelity

National Financial, Inc. for policy periods January 1, 2014 to January 1, 2015 and January

1, 2015 to November 15, 2015; and (c) Policy No. 20 CSE 90929 to Fidelity National

Financial, Inc. for policy periods November 15, 2015 to November 15, 2016, November

5

15, 2016 to November 15, 2017, and November 15, 2017 to November 15, 2015 (collectively, the "Hartford Policies").

21.    All of the Hartford Policies are subject to occurrence and personal and advertising injury limits of $1,000,000, general aggregate limits of $10,000,000, and products-completed operations limits of $2,000,000.  All of the Fidelity National Financial policies are subject to a deductible of $500,000 per occurrence or offense, subject to an aggregate of $16,750,000 for the 1/1/2014 to 1/1/2015 policy, an aggregate of $14,350,000 for the 1/1/2015 to 11/15/2016 policy, and an aggregate of $18,500,000 for the 11/15/2015 to 11/15/2016 policy, the 11/15/2016 to 11/15/2017 policy and the 11/15/2017 to 11/15/2018 policy.  The Lender Processing Services, Inc. policies are subject to a deductible of $50,000, subject to an aggregate of $2,750,000.

22.    Coverage under the Hartford Policies is afforded only to entities that qualify as an insured.  The Hartford Policies contain a General Liability Coverage Part, Section II - - Who is an Insured which defines which entities may be entitled to coverage under the Policies.  That section provides:

> **6. Additional Insureds When Required By Written Contract, Written Agreement or Permit**
>
> The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.
>
> A person or organization is an additional insured under this provision only for that period of time required by the contract or agreement.

6

However, no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by as and made a part of this Coverage Part.

* * *

**f.  Any Other Party**

Any other person or organization who is not an insured under Paragraphs a. through e. above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(1)  In the performance of your ongoing operations;
(2)  In connection with your premises owned by or rented to you; or

(3)  In connection with "your work" and included within the "products-completed operations hazard", but only if

(a)  The written contract or agreement requires you to provide such coverage to such additional insured; and
(b)  This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"[. . .]

23.    The Hartford Policies provide that, subject to their terms, conditions,

definitions and exclusions, Hartford will pay those sums that the insured becomes legally

obligated to pay as damages because of "bodily injury," "property damage," or "personal

and advertising injury" to which the insurance applies, and that Hartford will "have the

right and duty to defend the insured against any 'suit' seeking those damages."  The

insurance applies to "bodily injury" and "property damage" caused by an "occurrence"

during the policy period, and to "'personal and advertising injury' caused by an offense

arising out of your business but only if the offense was committed in the 'coverage

territory' during the policy period."

24.     "Bodily Injury" is defined in the Hartford Policies as physical injury,

sickness or disease sustained by a person, including, "if arising out of the above, mental

anguish or death at any time."

25.     "Property damage" is defined in the Hartford Policies as:

> a.  Physical injury to tangible property, including all resulting loss of
> use of that property.  All such loss of use shall be deemed to occur at
> the time of the physical injury that caused it; or
>
> b.  Loss of use of tangible property that is not physically injured.
> All such loss of use shall be deemed to occur at the time of the
> "occurrence" that caused it.
>
> As used in this definition, computerized or electronically
> stored data, programs or software are not tangible property.
> …

26.     "Occurrence" is defined in the Hartford Policies as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions."

27.     "Personal and advertising injury" is defined in the Hartford Policies as

injury, including consequential "bodily injury", arising out of one or more of the following

offenses[1]:

> a.     False arrest, detention or imprisonment;
>
> b.     Malicious prosecution;
>
> c.     The wrongful eviction from, wrongful entry into, or invasion
> of the right of private occupancy of a room, dwelling or
> premises that a person or organization occupies, committed
> by or on behalf of its owner, landlord or lessor;
>
> d.     Oral, written or electronic publication of material that
> slanders or libels a person or organization or disparages a
> person's or organization's goods, products or services;

---

[1]  The definition is provided as amended by endorsements entitled "Amendment of
Exclusions and Definition – Personal and Advertising Injury" and "Exclusion –
Discrimination."

    **e.** Oral, written or electronic publication of material that violates a person's right of privacy;

    **f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

    **g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"[.]

  28. Each of the Hartford Policies is subject to terms and conditions that must be met for coverage to be available. Without limitation, the Hartford Policies require an insured to provide prompt notice of occurrences and claims, to cooperate with Hartford in the resolution of claims for which coverage is sought, and not to settle any claim against the insured without consent of Hartford. The Hartford Policies provide:

> You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the "occurrence" or offense took place;
>
> (2) The names and addresses of any injured persons and witnesses; and
>
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

  29. Once a claim is made against an insured, the Hartford Policies then require that prompt notice be given to Hartford:

> If a claim is made or "suit" is brought against any insured, you or any additional insured must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
> (2) Notify us as soon as practicable.

  30. The insured is required to cooperate with The Hartford in the investigation and defense of any claim for which coverage is sought:

9

You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

31.     Additionally, the insured must not enter into any settlement without consent

of Hartford:

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

32.     The Hartford Policies numbered 20 CSE C 90929 for the policy periods

November 15, 2015 to November 15, 2016, November 15, 2016 to November 15, 2017,

and November 15, 2017 to November 15, 2018 include an endorsement entitled

"Amendment – Other Insurance Condition," which provides that the insurance only applies

on an excess basis:

**4. Other Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

10

> If this insurance is excess over other insurance, we will pay only our
> share of the amount of the loss, if any, that exceeds the sum of:
>
> > **a.** The total amount that all such other insurance would pay for
> > damages in the absence of this insurance; and
> >
> > **b.** The total of all deductible and self-insured amounts under all
> > that other insurance.

33.    The Hartford Policies also contain exclusions that limit or preclude

coverage for bodily injury or property damage.  One such exclusion bars coverage for

property damage that is expected or intended from the standpoint of the insured:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or intended from the
> > standpoint of the insured.  This exclusion does not apply to "bodily
> > injury or "property damage" resulting from the use of reasonable
> > force to protect persons or property.

34.    In addition to the exclusion for damage that is expected or intended, there

are a number of other exclusions that apply to property damage that are applicable to the

*Rhodes* Lawsuit.

35.    For example, and without limitation, the Hartford Policies include, by

endorsement, exclusions that provide that the Hartford Policies do not apply to "property

damage" or "personal and advertising injury" "due to the rendering of or failure to render

any professional service."  That endorsement's schedule describe "professional services"

as:

> Any other professional service provided by the insured including,
> but not limited to engineering or inspection services.

11

36.     The Hartford Policies do not apply to personal property in the control of the

insured or damage to real property on which any insured performs its work. Exclusion **j.**

provides, in part, that the Hartford Policies do not apply to property damage to:

> (4)  Personal property in the care, custody or control of the insured;
>
> (5) That particular part of real property on which you or contractors
> or subcontractors working directly or indirectly on your behalf are
> performing operations, if the "property damage" arises out of those
> operations[.]

37.     The Hartford Policies also include, by endorsement, an exclusion that bars

coverage for property damage arising from the repossessing of real property, which

provides:

> This insurance does not apply to "bodily injury", "property damage"
> or "personal and advertising injury" resulting from the rendering of
> or the failure to render financial services by any insured to others.
> For the purpose of this exclusion, financial services include but are
> not limited to: [. . .]
>
> **3.** Lending, or arranging for the lending of, money, including credit
> card, debit card, leasing or mortgage operations or activities or
> interbank transfers;
>
> **4.** Repossessing of real or personal property from a borrower or
> acting as an assignee for the benefit of creditors;
>
> This exclusion applies even if the claims against any insured allege
> negligence or other wrongdoing in the supervision, hiring,
> employment, training or monitoring of others by that insured, if the
> "occurrence" which caused the "bodily injury" or "property
> damage" or the offense which caused the "personal and advertising
> injury", involved the rendering or failure to render financial services
> by any insured for others. [. . .]

38.     The Hartford Policies issued to Fidelity National Financial also include an

endorsement titled **Exclusion – Insurance and Related Operations,** which bars coverage

for injury that results from claim, investigative, adjustment, engineering, inspection,

12

consulting, survey, audit, appraisal, actuarial or data processing services that are provided

for a fee:

> This insurance does not apply to "bodily injury", "property damage"
> or "personal and advertising injury" for which the insured may be
> held liable

> \* \* \*

> 3. Resulting from the rendering of or failure to render the following
> professional services:

> \* \* \*

> e. Conducting an investment, loan or real estate department or
> operations.

> \* \* \*

> g. Performing any claim, investigative, adjustment, engineering,
> inspection, consulting, survey, audit, appraisal, actuarial or data
> processing service for a fee.

39.     The *Rhodes* Lawsuit alleges that plaintiff in that action owned property that

was in default, but on which the lender had not yet foreclosed.

40.     The *Rhodes* Lawsuit alleges that Wells Fargo contracts with and employs

agents, such as ServiceLink, which entered the plaintiff's property to investigate its

vacancy status and secure the property in the event of a foreclosure.

41.     The *Rhodes* Lawsuit alleges that, in the course of providing these services,

Wells Fargo's agents wrongfully entered onto plaintiff's property.

42.     The *Rhodes* Lawsuit also alleges that, in the course of providing services to

Wells Fargo, Wells Fargo's agents damaged plaintiff's property by, among other things,

wrongfully changing the locks on plaintiff's property, damaging the locks and/or doors on

the property, wrongfully denying plaintiff access to the property, and by damaging fixtures

13

on the property, damaging or destroying personal property and/or conversion of plaintiff's personal property.

43.     In or around October 2017, Hartford received notice that Wells Fargo had tendered the *Rhodes* Lawsuit to ServiceLink for defense and indemnification.

44.     On information and belief, Wells Fargo disagrees with Hartford's contention that it has no coverage obligation for the *Rhodes* Lawsuit, necessitating this action to resolve the parties' dispute.

## FIRST COUNT
### *Declaratory Judgment*

45.     Hartford repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

46.     An actual controversy exists between Hartford, on the one hand, and Wells Fargo, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

47.     Hartford seeks a judicial determination regarding the parties' respective rights and obligations under the Hartford Policies in connection with the defense and indemnification of Wells Fargo for the *Rhodes* Lawsuit.

48.     Wells Fargo is not an "insured" under any of the Hartford Policies with respect to the *Rhodes* Lawsuit.

49.     The *Rhodes* Lawsuit does not seek damages for "bodily injury," "property damage," or "personal and advertising injury," arising from a covered "occurrence" as those terms are defined in the Hartford Policies.

50.     Coverage for the *Rhodes* Lawsuit is precluded to the extent that Wells

Fargo failed to comply with applicable conditions of the Hartford Policies, including the

requirement that timely notice be given to Hartford.

51.     To the extent that there is one or more covered occurrences, the exclusions

in the Hartford Policies (including the exclusions identified above) bar coverage for the

*Rhodes* Lawsuit.

52.     Hartford has no duty to defend or indemnify Wells Fargo in connection

with the *Rhodes* Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hartford Fire Insurance Company requests entry of a

declaratory judgment finding and declaring:

a.      That Hartford Fire Insurance Company has no duty to defend Wells Fargo

in connection with the *Rhodes* Lawsuit;

b.      That Hartford Fire Insurance Company has no duty to indemnify Wells

Fargo in connection with the *Rhodes* Lawsuit;

c.      That the Court award Hartford Fire Insurance Company its attorney fees

and costs; and

d.      That the Court adjudge and declare that Hartford Fire Insurance Company is

entitled to such further relief as may be necessary and proper.

15

Dated: April 12, 2018

Alison P. Baker (Florida Bar Id: 0114041)
James P. Ruggeri (*pro hac vice* to be filed)
Joshua D. Weinberg (*pro hac vice* to be filed)
SHIPMAN & GOODWIN LLP
1875 K Street NW, Suite 600
Washington, DC 20006
Tel: 202-469-7750
Fax: 202-469-7751
abaker@goodwin.com
jruggeri@goodwin.com
jweinberg@goodwin.com

*Counsel for Plaintiff Hartford Fire Insurance
Company*

16